**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **LAKEISHA SHOOTS,** ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 11-00673-KD-M** |
| ) | |
| **CITY OF MOBILE,** *et al.*, ) | |
| **Defendants.** ) | |

**ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment (Docs. 54-57), Plaintiff's Response (Doc. 59), and Defendants' Reply (Doc. 60).

**I.    Procedural Background**

In November 2011 (as amended October 2012), Plaintiff Lakeisha Shoots ("Shoots") initiated this action against Defendants Mayor Samuel Jones ("Jones"), Chief of Police Micheal Williams ("Williams"), Deputy Chief of Police Joseph Kennedy ("Kennedy"), Police Captain Amelia Brown ("Brown"), Police Sergeant Carla Shumock ("Shumock"), and the City of Mobile.  (Doc. 1, 16).[1]  Shoots' Complaint alleges discrimination for failure to promote, based on race, in violation of Title VII of the *Civil Rights Act of 1964,* and a state law claim for retaliation under Ala. Code §§ 35-9A-501 and 35-9AZ-501.[2]  (Id.)  Shoots seeks $550,000 in

---

[1] Plaintiff's original complaint was solely against the City of Mobile Police Department ("MPD"); her amended complaint (Doc. 16) –which supersedes and replaces the original complaint -- did not name MPD as a defendant.   As such, the MPD was terminated as a defendant in this case effective October 13, 2012.

[2] Shoots' retaliation claim is asserted only under state law. While the parties discuss a Title VII retaliation claim on summary judgment, such a claim was not alleged in Shoots' Complaint, and even though she referenced retaliation in her EEOC Charge she did not check the box claiming retaliation, and further clarified (via deposition) that her only federal law claim is one for discrimination under Title VII. (Doc. 55-2 at 7 (Dep. L.Shoots at 26)). Even assuming *arguendo* that a Title VII retaliation claim is before the Court, Eleventh Circuit precedent requires Shoots to prove that she engaged in a "statutorily protected activity" under 42 U.S.C. § 2000e-3(a).   Specifically, an employee is protected from discrimination if: 1) she has opposed any practice made an unlawful employment

compensatory damages and $3,500,000 in punitive damages.    (Id. at 4).

## II.    **Findings of Fact**[3]

Shoots, an African American, was hired by the City of Mobile Police Department ("MPD") on February 17, 1996, as a Public Safety Dispatcher I (PSD I) in the Communications Unit. (Doc. 55-1; Doc. 55-2 (Dep. L.Shoots at 18)).    On January 14, 2011, Shoots initiated a Step One grievance complaint against Radio Communications Officer Dorothy Thomas.    (Doc. 55-10 at 14; Doc. 59-9).    On March 1, 2011, a vacancy for an MPD position of Public Safety Dispatcher II ("PSD II") was posted; it was open to all PSD I employees.    (Doc. 55-4 at 5, 9 (Aff. D.Dees).    On March 2, 2011, Shoots received a "criticism" in her disciplinary record; the result was "no action."    (Doc. 55-10 at 14; Doc. 55-11 at 11, Doc. 55-13 at 3, 5 (Aff. S.Little)).

On April 11, 2011, oral interviews were conducted by a five (5) person MPD interview panel (the Promotional Committee) for the March 1, 2011 PSD II vacancy. (Doc. 55-5 (Aff. J.Kennedy at ¶3); Doc. 55-5 at 19-20).    The interview panel consisted of five (5) MPD Promotional Committee members: Defendants Kennedy and Shumock, Captain DeWayne Hill, Captain Carla Longmire, and Lieutenant James Wilson.    (Id.)    The Committee had access to an

---

practice by this subchapter (the opposition clause); or 2) she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter (the participation clause). See, e.g., Dudley v. City of Monroeville, 2011 WL 867276, *5 (S.D. Ala. Mar. 14, 2011) (citing Clover v. Total Systems Services, Inc., 176 F.3d 1346, 1350 (11th Cir. 1999)).    In otherwords, Shoots must present evidence that she "either voiced some *opposition* to race discrimination or *participated* in some proceeding concerning an allegation of race discrimination." Holiness v. Moore-Handley, Inc., 114 F.Supp.2d 1176, 1186 (N.D. Ala. 1999) (emphasis in original).    Shoots has established neither.    Instead, Shoots simply references the filing of her grievance complaint against Thomas due to Thomas, essentially, "not being fair" to Shoots by not being "professional" or "ethical" and "abusing her position" – not based on Shoots' voicing opposition to any race discrimination or participating in a proceeding concerning allegations of same.

        3  At the summary judgment stage, the facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v.. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

2

information sheet on each candidate, listing the name, employee number, hiring date, accrued time usage and a disciplinary history summary, if any.    (Doc. 55-5, 55-8, 55-9, 55-10, 55-11). Additionally, the Committee was given a copy of each candidate's supervisor's recommendation. (Id.)

In the oral interview, the Committee members had 10 questions to ask each candidate, and an Interview Scoring Sheet for each candidate. (Doc. 55-5 at 19-20 and Aff. J.Kennedy at ¶3; Doc. 55-8 at 5-7 and Aff. D.Hill at ¶5-6; Doc. 55-9 at 5-7 and Aff. C.Longmire at ¶5-6; Doc. 55-10 at 5-7 and Aff. J.Wilson at ¶5-6)).    The Committee was tasked with assigning a score (1 for a "poor response" to 5 for an "excellent response") for the candidate's response to each question.    (Docs. 55-5, 55-8, 55-9, 55-10).    The interview counted for 100% of each candidate's score.    (Doc. 55-5 at 18 and Aff. J.Kennedy at ¶11-12).

After the interview process, Shoots (African American) received a score of 50.8, Sheila Walker (Caucasian) received a score of 72.8, Sherry Barnes (African American) received a score of 71.6, and Saundra Norris (Caucasian) received a score of 64.8. (Id. (Aff. J.Kennedy at ¶12)). Walker, Barnes, and Norris had the three (3) highest scores of the 10 eligible candidates.    (Id. (Aff. J.Kennedy at ¶16)).    On the Certification of Eligibles (the promotional list), Shoots' name was listed second, while Barnes was listed third, Walker was listed fourth, and Norris was listed fifth.    (Doc. 55-4 at 6, 9 and Aff. D.Dees at ¶6, 8); Doc. 55-5 (Aff. J.Kennedy at ¶12)).[4]    On April 23, 2011, Walker received the promotion. (Doc. 55-4 at 9).

On September 15, 2011, Shoots filed an EEOC Charge of Discrimination against the MPD, alleging Title VII discrimination from May 21, 2011-September 14, 2011, specifying that

---

[4]  There is no explanation in the record as to why Shoots' name was listed second. However, the record is undisputed that Shoots' interview score was substantially lower than the three individuals who were promoted.

3

has been "denied being promoted" in 2011 due to her race and was retaliated against. (Doc. 55-1; Doc. 55-2 at 8 (Dep. L.Shoots at 31)). The EEOC required no action. (Doc. 55-6).

On September 16, 2011, another PSD II promotional opportunity arose at the MPD (for two (2) anticipated vacancies) and a Certification of Eligibles was issued. (Doc. 55-4 at 6 and Aff. D.Dees at ¶3). Per MPD protocol, the same list of Certificate of Eligibles and same interview scores, see *supra*, were used. (Doc. 55-4 at 12-13). See also Doc. 56 at 6. On September 24, 2011, the MPD promoted Barnes and Norris. (Doc. 55-4 at 6).

One day prior, on September 23, 2011, the EEOC issued a notice of right to sue to Shoots, stating it was unable to conclude there had been a Title VII violation. (Doc. 55-7).

## III. <u>Conclusions of Law</u>

## A. <u>Standard of Review</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (Dec. 2010). Rule 56(c) provides as follows:

*(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

**(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

**(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

*(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

*(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

4

> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c) (Dec. 2010).   Defendants, as the party seeking summary judgment bear the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."   Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).   If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323.   "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.   Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."   Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992) (internal citations and quotations omitted).

**B.      Title VII Race Discrimination Claim: Failure to Promote**[5]

At the outset, Shoots' discrimination claims as to the individual defendants lack merit. Title VII prohibits *an employer* from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).   To the extent Shoots

---

5 Shoots' Complaint is not a model of clarity.   Proceeding *pro se* at the time (she now has counsel), Shoots alleged a variety of claims in a narrative fashion.   (Doc. 16). The record indicates that Shoots' Title VII claim is for failure to promote (Doc. 16 at 1-4), not for hostile work environment or Title VII retaliation.

alleges claims against the individual defendants in their individual capacities (Doc. 16 at 4-15), "relief under Title VII is available against only the employer and not against individual employees whose actions would constitute a violation of the Act, *regardless* of whether the employer is a public company or a private company." Dearth v. Collins, 441 F.3d 931, 933 (11th Cir. 2006) (emphasis in original). See also e.g., Taite v. Alabama Dept. of Personnel, 2012 WL 3631619 (M.D. Ala. Jul. 16, 2012); Hollingshead v. Mobile Cty. Personnel Bd., 2012 WL 1970281, *3 (S.D. Ala. May 10, 2012); Wallace v. UAW Local 1639, 2006 WL 3834272, *2 (S.D. Ala. Dec. 22, 2006). Additionally, to the extent Shoots' alleges claims against the individual defendants in their official capacities (Doc. 16 at 4-15), such claims are redundant as her employer has been named as a defendant. See, e.g., Cross v. Alabama Dep't of Mental Health & Mental Retardation, 49 F.3d 1490, 1504 (11th Cir. 1995); Portera v. State of Ala. Dep't of Fin., 322 F.Supp.2d 1285, 1287 (M.D. Ala. 2004). Accordingly, the City of Mobile's motion for summary judgment as to Shoots' Title VII claim against individual Defendants Jones, Williams, Kennedy, Brown, and Shumock is **GRANTED.**[6]

Turning to remaining defendant the City of Mobile, as stated *supra*, Title VII prohibits employers from discharging an employee on the basis of race. 42 U.S.C. § 2000e–2(a)(1). A plaintiff carries the initial burden of establishing a prima facie case of discrimination on the basis of race. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Intentional discrimination can be proved through direct evidence, circumstantial evidence, or statistical proof. Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1274 (11th Cir. 2008). "Direct evidence of discrimination is 'evidence that, if believed, proves the existence of a fact without inference or presumption.'" Dixon v. Hallmark Cos., 627 F.3d 849, 854 (11th Cir. 2010) (quoting Wilson v.

---

6 The same ruling applies, if the Court were to assume Shoots alleged a Title VII retaliation claim.

B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004)).   There are (2) ways that a plaintiff can prove a claim of discrimination through circumstantial evidence: "under the three-step, burden-shifting   framework…in   McDonnell-Douglas...or,   alternatively,   by   presenting circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent."   Edmond v. Univ. of Miami, 441 Fed. Appx. 721 (11th Cir. 2011).

Under the McDonnell Douglas approach, once the plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged employment action.   McDonnell Douglas, 411 U.S. at 802; Denney v. City of Albany, 247 F.3d 1172, 1183 (11th Cir. 2001).   The employer must "articulate (not prove) some legitimate, nondiscriminatory justification" for the decision.   Ramsay v. Broward Cty. Sheriff's Office, 2008 WL 111304, *7 (S.D. Fla. Jan. 8, 2008).   If the defendant produces such a reason, the burden shifts back to plaintiff to show that the defendant's proffered reason(s) was pretextual. Id.   However, this "framework is not, and never was intended to be, the sine qua non for a plaintiff to survive a summary judgment motion in an employment discrimination case." Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011).

Notwithstanding the absence of any comparative evidence, Shoots' discrimination claims may proceed to trial "if the record, viewed in a light most favorable to the plaintiff, presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" Id. (internal citations and footnote omitted).   See also Chapter 7 Trustee v. Gate Gourmet, Inc., 683 F.3d 1249, 1255-56 (11th Cir. 2012) (applying Smith in holding that an employee "d[id] not have to use the McDonnell Douglas framework to survive summary judgment because the record contain[ed] enough non-comparator evidence for

a jury to reasonably infer that [her supervisor] discriminated against [her] because she was pregnant[]").   An inference "is not a suspicion or a guess" but rather "a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact[.]"   Smith, 644 F.3d at 1328 at n.25 (citations and internal quotation marks omitted)).

Shoots does not contend that she has direct evidence of discrimination or statistical proof of same, and the record does not indicate the existence of such.   Thus, Shoots must establish a prima facie case of discriminatory failure to promote, due to her race, through circumstantial evidence via either the McDonnell Douglas framework, or by establishing "a convincing mosaic."[7]

Under McDonnell Douglas, Shoots must first establish a prima facie case of Title VII race discrimination for failure to promote.   Shoots must show that: 1) she is a member of a protected class; 2) who sought and was qualified for positions that the City of Mobile was attempting to fill; 3) despite her qualifications she was rejected; and 4) the City of Mobile continued to attempt to fill the positions or in fact filled the positions with persons outside Shoots' protected class. See, e.g., Harrington v. Disney Regional Ent., Inc., 276 Fed. Appx. 863, 872 (11th Cir. 2007).   For the fourth prong, similarly situated comparators are not necessary; rather Shoots only has to show that the position was filled with a person outside of her protected class.   Harrington, 276 Fed. Appx. at 872-873 (citing Walker v. Mortham, 158 F.3d 1177, 1187 (11th Cir. 1998) in which the Eleventh Circuit explained that erroneous *dicta* via Perryman -- requiring a plaintiff to show that the promoted employee had "equal or lesser qualifications" -- had improperly entered the Eleventh Circuit's articulation of the standard, and reiterated that Crawford v. Western Electric Co., Inc., 614 F.2d 1300, 1315 (5th Cir. 1980) governs).

---

7  Neither party addressed the "convincing mosaic" route on summary judgment.

First, Shoots alleges that the City of Mobile discriminated against her, due to her race, by failing to promote her to the PSD II position and by instead promoting Barnes on September 24, 2011.   The parties agree that Shoots, an African American, is a member of a protected class. The evidence reveals that Barnes is an African American and is not outside of Shoots' protected class.   For these reasons, Shoots cannot establish a Title VII prima facie case.   Also, Shoots has not presented a convincing mosaic that the failure to promote her to Barnes' position was based on racial discrimination.    Accordingly, her failure to promote claim as to Barnes fails as a matter of law.

Second, Shoots alleges that the City of Mobile discriminated against her, due to her race, by failing to promote her to the PSD II position and by instead promoting Walker on April 23, 2011 and Norris on September 24, 2011. The parties agree that Shoots, an African American, is a member of a protected class.   The record indicates that Sheila Walker and Saundra Norris are Caucasian and are outside of Shoots' protected class.   Also, there is no dispute that Shoots was qualified for the PSD II position, but was not hired.   Thus, the burden shifts to the City of Mobile to explain why Shoots was not promoted to PSD II.

The City of Mobile has articulated legitimate non-discriminatory reasons for promoting Norris and Walker to PSD II instead of Shoots: Shoots was not promoted based on her low scores in key areas that were evaluated during the interview process including Shoots' use of leave and Shoots' disciplinary record.   (Doc. 56 at 14-19).   Moreover, the City of Mobile also cites Shoots' responses to certain interview questions related to transitioning and maintaining relationships with co-workers, multi-tasking, her strengths and weaknesses, and what she had to offer the unit which resulted in a lower interview score.   (Doc. 55-5 (Aff. J.Kennedy at ¶14,

16-17)); Doc. 55-8 (Aff. D.Hill at ¶7-8, 10); Doc. 55-9 (Aff. C.Longmire at ¶7-8, 10); Doc. 55-10 (Aff. J.Wilson at ¶7-8, 10); Doc. 55-11 (Aff. C.Shumock at ¶7-8, 10)).

In an effort to establish that these proffered reasons are pretext, Shoots alleges that the City of Mobile should not have considered her leave hours or her disciplinary record in making a promotional decision.[8]

Walker's promotion in April 2011 and Norris' promotion in September 2011 were based on test scores obtained through the aforementioned April 2011 interview process. As noted *supra*, these final scores were tallied by the five (5) Committee members, as they considered each candidates' answers to 10 questions during the interview process. Two (2) of these questions dealt with leave time and discipline.

For question two (2), the interview process addressed the total number of leave, vacation, and compensatory hours used by each candidate. Between January 2008-April 4, 2011, Shoots used 775 sick leave hours, 522 vacation hours, and 183 compensatory hours. (Doc. 55-10 at 17, Doc. 55-11 at 14, Doc. 55-12 at 2 (Aff. L.Westerberg at ¶4)). In comparison, Norris' and Walker's annual average use of leave was less than half of Shoots' annual average leave. (Doc. 55-12 at 2 (Aff. L.Westerberg at ¶4-6)). Shoots explains that her "excessive time off" was due to maternity leave and caring for her very ill son – suggesting it should not be counted.

For question three (3), the interview process addressed the disciplinary record for each candidate. While Shoots' record revealed one (1) major disciplinary event and three (3) minor disciplinary events (suspension, written reprimands, and a "criticism"), neither Walker nor

---

8 The Court notes that if the two (2) questions (leave time and discipline) were removed from the interview process, Shoots' scores would still be lower than those who were promoted (i.e., if the Committee considered only questions #1 and #4-10, Walker's score would have been 57, Norris' score would have been 50, and Shoots would have been 46).

Norris had any events in their records.   (Doc. 55-13 (Aff. S.Little at ¶5-7)).   Shoots focuses on the "criticism" in her record, suggesting it should not have been assessed during the interview process because of the "not guilty" finding.   Additionally, Shoots highlights the grievance complaint she filed against Thomas and a drop in her service rating, claiming that these were "held against her" during the interview process.

In sum, Shoots simply argues that certain information should not have been considered during the interview because either it was incorrect or extenuating circumstances made the information irrelevant.   However, Shoots "cannot merely quarrel with the wisdom of the employer's reason, but 'must meet the reason head on and rebut it.'"   Moore v. Jefferson Cty. Bd. Of Educ., 2012 WL 3030109, *7 (N.D. Ala. Jun. 11, 2012)).   Courts are not concerned with whether an employment decision is prudent or fair, only with whether it was motivated by unlawful animus; for instance, an employer may fire an employee for a reason based on *erroneous facts* or for no reason at all, so long as the action is not for a discriminatory reason. Pitts v. Housing Auth. v. City of Huntsville, AL, 262 Fed. Appx 953 (11th Cir. 2008) (emphasis added).   A reason is not pretext for discrimination "unless it is shown *both* that the reason was false, *and* that discrimination was the real reason."   St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) (emphasis added).   "Subjective reasons are not the red-headed stepchildren of proffered nondiscriminatory explanations for employment decisions[;]" federal courts do not sit as super-personnel departments that reexamine an entity's business decisions…" Chapman v. AI Transport, 229 F.3d 1012, 1034 (11th Cir. 2000); Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991).   Accordingly, because Shoots has failed to offer any evidence that the decision makers' explanations are pretext for race discrimination, she has failed to meet her

burden.

Even discarding <u>McDonnell Douglas</u>, the Court is unable to piece together a "convincing mosaic" from the circumstantial evidence on record from which a reasonable jury could infer an unlawful discriminatory intent in the City of Mobile's failure to promote Shoots.   *Cf.* <u>Davis v. Dunn Constr. Co., Inc.</u>, 2012 WL 1952125, at *15 (N.D. Ala. May 24, 2012) ("In [<u>Smith</u>], [644 F.3d 1321] the 'convincing mosaic of circumstantial evidence' was extensive: there was a documented history of disparate treatment of Caucasian and African–American employees, a spreadsheet listing the employees by name and race that the defendant's disciplinary review committee used to make discipline decisions, and a news program reporting the defendant's struggles with racism in the workplace[]").   The record lacks examples of overt racial hostility or historical evidence of racial disparity at the MPD, and Shoots does not even detail any racial events surrounding the interview process.   At best, Shoots speculates that the questions asked during the interview process were somehow tailored to Norris and Walker based upon the race of the candidate; however, Shoots has shown no evidence of this, or that the interview questions even varied from candidate to candidate.   (Doc. 55-2 (Dep. Shoots at 31, 77-78)).   Testimony by the committee members reveals further, that the decision not to promote Shoots was based on non-racial factors.   <u>See</u> *supra*.   Put simply, "'[t]he ultimate burden of persuading the trier of fact that the defendant is intentionally discriminating against the plaintiff remains at all times with the plaintiff[,]'" and Shoots has failed to present sufficient evidence from which a trier of fact could reasonably find for her on her failure to promote claim.   <u>Wilson</u>, 376 F.3d at 1086.

Accordingly, the City of Mobile's motion for summary judgment, on Shoots' Title VII failure to promote claim relating to Walker and Norris, is **GRANTED.**

C.   __State Retaliation__

Shoots alleges retaliation by Dorothy Thomas,[9] in violation of <u>Ala</u>. <u>Code</u> §§ 35-9A-501 and 35-9AZ-501, due to Shoots' filing of complaints against Thomas, which she alleges prompted her personnel file being "packed," her being "moved" and "subjected to adverse disciplinary, and having her service rating dropped."   (Doc. 55-1 at 10, 12-13 (Dep. L.Shoots at 34, 36-37)).   Shoots has failed to provide any authority that such retaliation exists under Alabama law.   Notably, Alabama Code Section 35-9A-501 relates to retaliatory conduct prohibited under the *Uniform Residential Landlord and Tenant Act*, which is inapplicable, and there is no Section 35-9AZ-501.   Moreover, Plaintiff did not address her state law retaliation claims on summary judgment.   For these reasons, the City of Mobile's motion for summary judgment, on Shoots' state law retaliation claims, is **GRANTED.**

IV.   __Conclusions__

Accordingly, based on the foregoing, it is **ORDERED** that the Defendants' Motion for Summary Judgment (Docs. 54-57), is **GRANTED.**

A Final Judgment consistent with the terms of this Order shall be entered by separate document as required by Rule 58 of the <u>Federal Rules of Civil Procedure</u>.

**DONE** and **ORDERED** this the **28**th day of **June 2013.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

9  Thomas is not a defendant in this case.